AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple Cellular Phone (iPhone), Unknown IMEI No.<br>Seized as FP&F No. 2019250400165001<br>(Line Item 0003) | )<br>)<br>)<br>)<br>)<br>) | Case No.<br>**19MJ4244** |

**FILED**
SEP 3 0 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                   DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960 and 963 | Importation of controlled substances and conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Russell Slingerland Jr., SA, Homeland Sec. Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/30/19

_____
*Judge's signature*

City and state: San Diego, CA     Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple Cellular Phone (iPhone)
    Unknown IMEI No.
    Seized as FP&F No. 2019250400165001 (Line Item 0003)
    ("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security Investigations, 9495 Customhouse Plaza, San Diego, CA 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period from April 2, 2019 through July 2, 2019:

a. tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# AFFIDAVIT

I, Russell Slingerland Jr., being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Apple Cellular Phone (iPhone)
> Unknown IMEI No.
> Seized as FP&F No. 2019250400165001 (Line Item 0003)
> (" **Target Device** ")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Oscar ALVARADO ("ALVARADO") for importing approximately 22.22 kilograms (48.98 pounds) of cocaine from Mexico into the United States. *See U.S. v. Oscar ALVARADO*, Case No. 19-cr-02866-CAB-1 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Device** was seized from ALVARADO at the time of his arrest, has been securely stored since that time, and is currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December 2016. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the

1

Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

5. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

//

7.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a.  tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

   b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

   c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

   d.  tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8.      On July 1, 2019, at approximately 3:21 a.m., ALVARADO applied for permission to enter the United States at the San Ysidro Port of Entry. ALVARADO was the driver and sole occupant of a Honda Civic bearing California license plates. A Narcotics and Human Detection Dog alerted to a trained odor coming from the vehicle in the pre-primary inspection area. ALVARADO was questioned by a Customs and Border Protection Officer ("CBPO"), assigned to the Anti-Terrorism and Contraband Enforcement Team who had arrived to assist the Canine Team, regarding the purpose of his travel. ALVARADO stated that he was going to "San Diego" to work. ALVARADO was asked

3

to exit the vehicle. A Z-Portal examination of the vehicle revealed anomalies in the fuel tank of the vehicle, from which 20 packages were removed. The 20 packages were vacuum sealed in clear plastic wrap and black carbon paper and had a total weight of 22.22 kilograms; one package field-tested positive for cocaine.

9. ALVARADO was advised of his *Miranda* rights and elected to answer questions without an attorney present. ALVARADO initially denied knowledge of the cocaine that was seized from the vehicle fuel tank and explained that he (1) had recently purchased the vehicle, approximately two months ago, (2) believed the vehicle had possibly been taken from his home and loaded with controlled substances without his knowledge. ALVARADO, when pressed, then changed his story and stated he had been coerced to smuggle the cocaine and offered the explanation that he had been assaulted at a Wal-Mart in Rosarito, Mexico, the previous day. According to ALVARADO, he, his wife, and their infant daughter had been at the Rosarito Wal-Mart when a group of armed men approached and assaulted him and his wife. ALVARADO stated his infant daughter had been kidnapped by these men, who drove a dark tinted Chevrolet Tahoe, and that he had attempted to pursue the armed men in his vehicle. ALVARADO also stated he had called the local police, but they had never responded. ALVARADO stated he was unable to follow the armed men who had kidnapped his daughter, and gave up the chase. ALVARADO then stated he was contacted several hours later by these armed men, and they demanded he smuggle drugs into the United States for them. ALVARADO stated the men came to his home, took his vehicle, and returned the vehicle several hours later. ALVARADO stated he was supposed to bring the vehicle to a donut shop in San Ysidro called Pepe's and drop it off. ALVARADO stated he spoke to the kidnappers for approximately three hours on his cell phone, the **Target Device**, and the group called themselves the "Patrones." ALVARADO chose to stop the interview shortly after being pressed about inconsistencies in his story, at which time the interview stopped.

10. Later, ALVARADO's wife was contacted utilizing the assistance of a fluent Spanish speaker. ALVARADO's wife told investigators that she and their infant daughter

were safe and that no such kidnapping incident had transpired.

11. Based upon my experience and investigation in this case, I believe that the **Target Device** contains evidence of violations of Title 21, United States Code, Sections 952, 960, and 963. Specifically, I believe that ALVARADO and other persons as yet unknown, were involved in an ongoing conspiracy to import cocaine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that ALVARADO may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

12. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Given this, and TECS records indicating that ALVARADO entered the United States on foot and in the vehicle more than 40 times in the three months preceding his arrest, I respectfully request permission to search the **Target Device** for data from April 2, 2019 through July 2, 2019, which was the day following the arrest of ALVARADO.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, Homeland Security Forensics will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

6

## CONCLUSION

17. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 by ALVARADO.

18. Because the **Target Device** was seized at the time of ALVARADO's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from April 2, 2019 through July 2, 2019.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Russell Slingerland Jr.
Homeland Security Investigations

Subscribed and sworn to before me this 30th day of September, 2019.

_____
Hon. Michael S. Berg
United States Magistrate Judge

7